UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD LEITE,<br><br>    Petitioner,<br><br>    v.<br><br>HUNTER ANGLEA, Warden,<br><br>    Respondent. | Case No. 17-cv-06707-YGR (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner Edward Leite, a state prisoner currently incarcerated at the Sierra Conservation Center, brings the instant *pro se* habeas action under 28 U.S.C. § 2254 to challenge his 2013 conviction and sentence rendered in the Alameda County Superior Court of one count of intercourse with a child under 10 years old (count one), four counts of lewd acts with a child under 14 years old (counts two through five) and one count of possession of child pornography (count six). 2 CT 319-326; 2 RT 321-324.

Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the petition for the reasons set forth below.

## I. BACKGROUND

### A. Factual Background

The California Court of Appeal summarized the facts of Petitioner's offenses and sentencing as follows. This summary is presumed correct. *See Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

> Defendant was charged by amended information with one count of intercourse with a child under 10 years ([California] Pen. Code, § 288.7, subd. (a); count one), four counts of lewd acts with a child under 14 years (§ 288, subd. (a); counts two, three, four, five), and one count of possession of child pornography (§ 311.11, subd. (a); count six). With respect to the section 288 violations, the information included enhancement allegations that the offenses involved separate occasions and separate victims (§ 667.6, subds. (c), (d)) and a one strike allegation that defendant committed offenses against more than one victim (§ 667.61, subd. (e)(5)). Defendant was charged with committing offenses against two minors, Jane Doe (Jane), who was between five and seven years of age at the time of the offenses, and

John Doe (John), defendant's son, who was between 11 and 13 years old at the time of the offenses. The following evidence was presented at trial.

### *Count one (section 288.7—intercourse with a child under 10 years )*

Because defendant does not challenge his conviction on count one, only a brief summary of the facts relating to that offense is necessary to provide context for the evidence presented in support of the remaining charges. Jane and her mother had been living with defendant and his son since Jane was four or five years old. Jane's mother testified that she left Jane with defendant on the afternoon of October 30, 2010. When she returned later that evening, Jane was in the bathroom screaming that "her privates hurt." Jane told her mother that defendant had hurt her while "playing horsey." Jane explained to her mother, and testified at trial, that "playing horsey," meant getting on top of each other. While they played horsey, Jane's private part touched defendant's private part, which was inside her. Jane testified that this was not the first time she had played horsey with defendant. Defendant denied having intercourse with Jane and claimed that she hurt herself on monkey bars earlier that day.

### *Counts two through six*

Following the October 30 incident, defendant's home was searched. Officers recovered two laptop computers on which a forensic investigator found approximately 25 photographs of suspected child pornography and 160 video files of child pornography. None of the videos or photographs were found in the trash file. Other videos were found that depicted defendant involved in sexual activity with Jane's mother. Defendant admitted having the videos and photos on his computers that depicted him with Jane's mother but claimed that he had never seen the others before. He testified that there were many other people who had access to his computers. A selection of the videos downloaded from defendant's computers were played for the jury.

Officers also found two videos depicting Jane and John engaging in sexual activity. The first video was found on a DVD in defendant's bedroom. An investigator testified that defendant was visible at the beginning of the DVD "turning on a camcorder or some type of video reporting device" and he was also visible at the end of the video. The second video was found in a file on one of defendant's computers. According to the investigator, defendant is again seen "[a]t the beginning of the video . . . walking up to a video camera that appeared to be mounted on the wall and he had reached up to do some kind of adjustment to the camera, but the camera was pointed right at his face." Defendant admitted on cross-examination that in both videos, the children look directly at the camera and in one Jane can be heard saying "he's recording us again." In closing argument, the prosecution emphasized sections of the second video in which defendant can be seen entering the room and telling the children to open the blinds. Then he tells the children to go back to what they were doing and immediately thereafter Jane and John engage in sexual conduct. Both videos were shown to the jury.

2

> John testified that he and Jane had sex about 12 to 14 times and on each occasion their conduct was videotaped. The video camera was located unhidden in John's closet. John testified that his father had shown him pornography and told him to "try these positions" with Jane. John felt like he "just had to say okay." He explained, "He was my father. I tried to gain something from that" and "I couldn't say no to my father" because he "felt threatened by him" "[e]veryday." Jane was seven or eight in the video, and John was 11. John knew what he was doing was wrong, but he did it "for [his] father's entertainment." Afterward, he felt "[s]hocked." At the time of trial, he felt "[g]uilty."
>
> Defendant admitted that he recorded the first video found on the DVD in his bedroom. The video depicted Jane and John, both of whom were nude, having sex together. Defendant testified that he had been warned by someone that the children were playing doctor. John had denied it when he questioned him, but defendant wanted to see what they were doing. He admitted that after watching the video, he did not tell the children's mothers or anyone else about the "kids'" behavior. As to the second video, defendant could not remember if he recorded it. He thought it might have recorded automatically or been activated by a motion sensor. He claimed that he had never seen the video until his counsel showed it to him. Regarding his presence in the second video, defendant said he "was checking in on them periodically." He denied that he told the minors to engage in sexual activity or that he showed pornography to his son or told him what to do with Jane. The jury found defendant guilty on all counts and found the special allegations to be true. Defendant was sentenced to a total term of 125 years to life plus three years. He timely filed a notice of appeal.

*People v. Leite*, No. A138456, 2014 WL 1496556, *1-2 (Cal. Ct. App. Apr. 17, 2014) (footnote omitted and brackets added).

### B. Procedural Background

As mentioned above, in February 2013, Petitioner was convicted of intercourse with a child under ten years old, four counts of lewd acts with a child under fourteen years old, and one count of possession of child pornography. 2 CT 319-326; 2 RT 321-324. Petitioner was initially sentenced to 125 years to life plus three years in state prison. 2 CT 329-334; 2 RT 336-339.

On April 17, 2014, the California Court of Appeal affirmed the conviction, but reversed the judgment and remanded the case to the state superior court with directions to modify the sentence on count two through five to impose consecutive fifteen-year-to-life terms under California Penal Code § 667.61(b). *See Leite*, 2014 WL 1496556, *6; Resp't Ex. 6.

Thereafter, Petitioner filed a petition for review, and on June 25, 2014, the California

Supreme Court denied review. Resp't Exs. 7, 8.

In September 2015, Petitioner filed his first federal habeas petition in this Court. *See* Case No. C 15-4480 NJV (pr). On December 18, 2015, Former Magistrate Judge Nandor J. Vadas dismissed the petition for failure to exhaust state court remedies. *See* Dkt. 13 in Case No. C 15-4480 NJV (pr).

On August 31, 2016, Petitioner filed a state habeas petition in the California Court of Appeal, which was denied on September 1, 2016. Dkt. 18-2 at 551.

On May 11, 2017, Petitioner filed a state habeas petition in the California Supreme Court, which was denied on August 30, 2017. Resp't Exs. 9 and 10; Dkt. 1 at 54.

On November 21, 2017, Petitioner filed the instant petition in federal court. Dkt. 1.

On June 21, 2018, Respondent filed an Answer. Dkt. 17. Thereafter, Petitioner filed a Traverse. Dkt. 19. The matter is now fully briefed.

## II. LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, s*ee Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

### A. 28 U.S.C. § 2254(d)(1)

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law under subsection (d)(1), the Court must first identify the "clearly

established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the United States Supreme Court which existed at the time the petitioner's state court conviction became final. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405-406. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). In applying the above standards on habeas review, the Court reviews the "last reasoned decision" by the state court. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Cannedy v. Adams*, 706 F.3d 1148, 1156 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

No reasoned decision exists on Petitioner's ineffective assistance of counsel ("IAC")

claims, which were summarily denied by the state appellate court on September 1, 2016. Dkt. 18-2 at 551. On May 11, 2017, Petitioner filed a state habeas petition in the California Supreme Court, which was also summarily denied on August 30, 2017. Resp't Exs. 9 and 10. A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay,* 692 F.3d 948, 957 & n.3 (9th Cir. 2012). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011).

"Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which [a court] can determine whether a silent state court decision is objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Even where no reasoned decision is available, the habeas petitioner still bears the burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The federal court is obligated to review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Id.* This Court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102.

**B. 28 U.S.C. § 2254(d)(2) and (e)(1)**

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record. *Taylor v. Maddox*, 366 F.3d 992, 1005 (9th Cir. 2004), *abrogated on other grounds*, *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014). A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C.

6

§ 2254(e)(1). The presumption of correctness applies to express and implied findings of fact by both trial and appellate courts. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *see Williams v. Rhoades*, 354 F.3d 1101, 1108 (9th Cir. 2004) ("On habeas review, state appellate court findings—including those that interpret unclear or ambiguous trial court rulings—are entitled to the same presumption of correctness that we afford trial court findings.").

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court. *See Taylor*, 366 F.3d at 999-1000. In *Taylor*, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1). *Id.* First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2). *Id.* at 1000. The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings. *Id.* Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by addressing the state court finding of a presumption of correctness under § 2254(e)(1). *Id.* According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error. *See* 28 U.S.C. § 2254(e)(1). "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." *Taylor*, 366 F.3d at 1000.

If constitutional error is found, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

**III.    INEFFECTIVE ASSISTANCE OF COUNSEL ("IAC") CLAIMS**

Petitioner raises IAC claims as to his trial counsel, David J. Byron, Esq., based on the failure to raise a defense as to count one, and as to his appellate counsel, Dirck Newbury, based on

7

the failure to contest Petitioner's conviction on count one. Dkt. 1 at 5, 7-9.

### A. Background

As mentioned above, Petitioner was charged with, among other charges, one count of intercourse with a child under ten years (count one). Under the "Supporting Facts" section in the instant petition, Petitioner states as follows:

> Petitioner went to trial upon a count of unlawful intercourse with a minor, which was the initial crime charged against Petitioner upon his arrest. A year had elapsed while Petitioner was in custody at the county jail until further felony counts unrelated to the initial count one became charged against Petitioner Leite.
>
> When initially charged, upon count one, the minor victim immediately underwent sexual assault tests at a hospital. Not only was defense counsel aware that prompt testing was performed upon count one victim Jane Doe, medical personnel that actually performed the sexual assault testing testified at Petitioner Leite's trial in which he was convicted and sentenced.
>
> At trial Petitioner's defense attorney, David J. Byron, never raised any defense to count one. Specifically, Attorney Byron never performed any cross-examination nor direct examination of the medical personnel that performed the sexual assault testing of count one victim Jane Doe. Petitioner was accused at trial of a sexual penetration assault upon Jane Doe, yet zero scientific evidence such as DNA supported the charged count. Defense Attorney David Byron never raised the fact that zero DNA evidence was recovered from Jane Doe despite testimony from the medical personnel that immediate testing was performed. Testimony of the victim Jane Doe described and also testified that Petitioner entered into her vagina with an unprotected penis performing unquestionable coitus. Yet, no physical evidence of such was ever proffered by the prosecutor. (see "Exhibit A," excerpts of count one victim Jane Doe's trial testimony).
>
> The police officer on the scene the day of the occurrence of the charged crime of count one had testified at trial, describing how Jane Doe was taken immediately to a children's hospital for a sexual assault testing. Defense Attorney David Byron never raised the fact that no DNA or other scientific evidence was recovered through the DNA testing to link Petitioner Leite to the allegation of count one (see "Exhibit B," excerpts of count one investigating police officer).
>
> The physician that performed the sexual assault test upon victim Jane Doe involving count one testified in regards to such testing. Defense Attorney David Byron never raised the fact that no DNA or other scientific evidence was recovered through the testing to link Petitioner Leite to the allegation of count one (see "Exhibit C," excerpts of trial testimony of Dr. Crawford-Jakubiak).
>
> Petitioner Leite testified at trial and had described how any injury to Jane Doe occurred the day of his arrest, and denied subjecting Jane

8

> Doe to any sort of sexual assault or battery (see "Exhibit D," excerpts of trial testimony of Petitioner Leite).
>
> Appellate Attorney Derick Newbury did not at all contest Petitioner's conviction on count one on direct appeal. The appellate court noted in their opinion that count one was not contested by appellate counsel Derick Newbury (see, "Exhibit E," excerpt of appellate court opinion).

Dkt. 1 at 5, 7-9.

### B. Applicable Law and Analysis

Petitioner raises the following IAC claims: (1) his trial counsel Attorney Byron's failure to raise a defense to count one, including failing to cross-examine the medical personnel and failing to raise the fact that there was no DNA or other scientific evidence discovered on the victim; and (2) his appellate counsel Attorney Newbury's failure to contest Petitioner's conviction on count one.

Petitioner raised these same IAC claims in his state habeas petition before the California Supreme Court. Dkt. 18-2 at 540-546. Under the "Supporting Facts" section in that state habeas petition, he stated as follows:

> Petitioner Leite recently filed a petition for a writ of habeas corpus in the Court of Appeal which was denied by that court on September 1, 2016 (Attachment One). That petition specifically raised the sole issue of Petitioner being denied the effective assistance of counsel at trial, and then further denied the effective assistance of counsel on direct appeal. After being denied by the Court of Appeal on September 1, 2016, the Ninth Circuit Court of Appeals issued a published decision on January 30, 2017, pertaining directly to ineffective assistance of counsel claims presented by a California state prisoner on habeas corpus.[1] Petitioner now contends that new law decided after the Court of Appeal denied relief permits this Honorable California Supreme Court to entertain this instant new petition.
>
> The specific ground raised within the petition (filed no. A149207) was that trial counsel entirely failed to litigate the facts during the trial

---

[1] The Court notes that in his state habeas petition, Petitioner relied on *Hardy v. Chappell*, 849 F.3d 803 (9th Cir. 2017). Dkt. 18-2 at 543. However, Petitioner does not rely on this case in his federal habeas petition. See Dkt. 1. In any event, the Court finds the instant action is distinguishable from *Hardy*. In *Hardy*, the Ninth Circuit Court of Appeals held that when the California Supreme Court denied Hardy's petition, it used a substantial evidence standard that is contrary to *Strickland*. *See Hardy*, 849 F.3d at 819-20. Such was not the case here because the California Supreme Court summarily denied Petitioner's state habeas petition, as further explained below. Resp't Exs. 9, 10; Dkt. 1 at 54.

> that Petitioner's DNA was not discovered after an immediate performance of a S.A.R.T. examination on the alleged victim of count one. All testimony of count 1 indicated that Petitioner inserted his erect penis—unprotected by any condom—into the vagina of count 1 victim Jane Doe.
>
> Included within that petition was the Appellate Court's decision affirming Petitioner Leite's convictions on direct appeal (attachment two). In that decision, it is clear that Petitioner Leite's then appellate counsel declined to contest count 1 of the trial, as the decision states: "Because defendant does not challenge his conviction on count one, only a brief summary of the facts relating to that offense is necessary to provide context for the evidence presented in support of the remaining charges." (see Attch. Two, pg. 2). That petition also contained many excerpt pages from the briefs on direct appeal used as exhibits to demonstrate how, even as the appellate court's decision announces, a sexual penetration was alleged to have been perpetrated upon Jane Doe, yet despite an immediate SART examination performed within minutes of the alleged intercourse, Petitioner Leite's defense attorney at trial entirely failed to raise the fact that zero DNA evidence matching Petitioner Leite was recovered from Jane Doe's SART exam during trial. Then, on direct appeal, that obvious and glaring defense omission by the defense attorney was not raised on appeal as an ineffective assistance of counsel claim.

*Id.* at 540-542 (footnote added).

The state supreme court rejected the IAC claims, finding that Petitioner had failed to satisfy his burden of pleading sufficient grounds for relief, citing *People v. Duvall*, 9 Cal. 4th 464, 474 (1995).[2] Resp't Exs. 9, 10; Dkt. 1 at 54.

As there is no reasoned state decision addressing these IAC claims, the Court will conduct "an independent review of the record" to determine whether the state courts' rejection (including the California Supreme Court's summary denial[3]) of these claims was an objectively unreasonable

---

[2] As mentioned above, the state appellate court also rejected the IAC claims, but that court's summary denial did not discuss the specific IAC claims in its decision. *See* Dkt. 18-2 at 551.

[3] The state-court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Where the rationale of that decision is unexplained, courts employ the "look through" doctrine, looking to the previous state court judgment on the same claim. *Id.* at 804. In this case, the California Supreme Court issued a summary denial of Petitioner's habeas petition. Resp't Exs. 9 and 10; Dkt. 1 at 54. "Post-card" denials such as these are generally presumed to be adjudications on the merits, absent some indication that another reason for the state court's decision is more likely. *See Harrington*, 562 U.S. at 99-100. The California Supreme Court's denial cited *Duvall*, 9 Cal. 4th at 474, which discusses procedural and substantive requirements for habeas petitioners. *See Seeboth v. Allenby*, 789 F.3d 1099, 1103 (9th Cir. 2015). The Court finds that the California Supreme Court's citation to *Duvall* should be construed as a ruling on the merits, which would preclude application of the procedural default rule. Thus, the Court will resolve the merits of Petitioner's IAC claims below.

application of clearly established federal law. *Himes*, 336 F.3d at 853.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). There is a two-prong test applicable to claims for ineffective assistance of counsel. *Id.* at 688. First, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Id.*; *see also Hasan v. Galaza*, 254 F.3d 1150, 1154 (9th Cir. 2001). The defendant must overcome a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance which, under the circumstances, might be considered sound trial strategy. *Harrington,* 562 U.S. at 104; *United States v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

To satisfy the second prong, the petitioner must establish that he was also prejudiced by counsel's substandard performance. *See Gonzalez v. Knowles*, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing *Strickland*, 466 U.S. at 694). Under *Strickland*, "[o]ne is prejudiced if there is a reasonable probability that but-for counsel's objectively unreasonable performance, the outcome of the proceeding would have been different." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. (citing *Strickland*, 466 U.S. at 693). Judicial scrutiny of counsel's performance is "highly deferential." *Strickland*, 466 U.S. at 689. A claim for ineffective assistance of counsel fails if either one of the prongs is not satisfied. *Strickland*, 466 U.S. at 697.

Under AEDPA, a federal court's review of a state court's decision on an IAC claim is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). The question is not whether counsel's actions were reasonable; rather, the question is whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105; *Bemore v. Chappell*, 788 F.3d 1151, 1162 (9th Cir. 2015) (same). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Griffin v.*

11

*Harrington*, 727 F.3d 940, 945 (9th Cir. 2013) (quoting *Harrington*, 562 U.S. at 101).

It is unnecessary for a federal court considering a habeas ineffective assistance of counsel claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even establish incompetence, sufficient to constitute deficient performance, under the first prong. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). Likewise, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *See Strickland*, 466 U.S. at 697; *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (applauding district court's refusal to consider whether counsel's conduct was deficient after determining that Petitioner could not establish prejudice), *cert. denied*, 516 U.S. 1124 (1996).

### 1. Trial Counsel's Failure to Cross-Examine Medical Personnel

Petitioner claims that his trial counsel failed to cross-examine the medical personnel who performed the SART exam on the victim. Dkt. 1 at 5, 7.

The record shows that the prosecution did not call the medical personnel who performed the SART exams but instead called Dr. James Crawford-Jakubiak to testify as an expert witness, and the Court found that Dr. Crawford-Jakubiak was an expert on child sexual abuse. 1 RT 146. Dr. Crawford-Jakubiak testified that he reviewed the findings prepared after the SART exam on the victim in the instant action, which had been performed by a nurse practitioner at the children's hospital. 1 RT 153. The initial SART exam was conducted several hours after the victim said she and Petitioner had "played horsey," and the victim reported that Petitioner's "private part" had been inside her "private part." 1 RT 67-68, 140-157. Dr. Crawford-Jakubiak explained that the nurse practitioner was "concerned about what she thought was an abrasion in [and] around this location involving the hymen." 1 RT 155. The SART exam revealed injuries consistent with a "blunt penetrating event" to the victim's posterior vaginal wall. 1 RT 156. There were also areas of redness in the hymen and near the urethral meatus. 1 RT 155. Because the nurse practitioner "was concerned that she saw a traumatic injury," a follow-up exam was scheduled about four and a half weeks later. 1 RT 155. The follow-up exam was documented by a physician who examined the victim, and Dr. Crawford-Jakubiak also reviewed these findings. 1 RT 155. The follow-up

12

exam revealed that "[a]ll the areas of redness in the vagina [were] gone," and that the physician "believed that this represented what [they] call a submucosal hemorrhage . . . [or] small areas of bleeding." 1 RT 155. When Dr. Crawford-Jakubiak was asked by the prosecutor whether the findings was "consistent or inconsistent with sexual assault," the doctor answered that it was consistent with a "blunt penetrating event" and explained as follows: "So as I would interpret this, an object pushed between the labia, pushed against the hymen and the posterior vaginal wall, that was, again, right there, and caused a contact injury." 1 RT 156.

While Petitioner claims that his trial counsel failed to cross-examine the "medical personnel that performed the sexual assault testing," dkt. 1 at 7, as mentioned above, the record shows that the prosecution did not call these medical personnel to testify and instead called an expert witness to review the findings from the SART initial and follow-up exams. 1 RT 153-156. Furthermore, the record shows that trial counsel cross-examined Dr. Crawford-Jakubiak, asking him, among other questions, if he could tell when the injuries he described had occurred. 1 RT 157. Dr. Crawford-Jakubiak responded no. 1 RT 157. Trial counsel also asked Dr. Crawford-Jakubiak "what explanation would [he] give if [he] had heard that [the victim] complained of pain when she peed," to which the doctor explained that the "common explanation" was that it was "a urinary tract infection or hygiene issues." 1 RT 157.

In response to such expert testimony, trial counsel then called Dr. Forrest Smith as an expert witness to challenge the SART exam findings. 1 RT 175-187. The Court found that Dr. Smith was an expert "in the area of obstetrics and gynecology." 1 RT 183-184. Dr. Smith testified that he reviewed the SART exam findings and the photographs, and stated as follows, ". . . I could possibly agree with the SART examiner that the area pointed out was somewhat distinguished from the other tissue, but to call it an abrasion I could not go that far." 1 RT 185.

Respondent points out that trial counsel "did in fact cross-examine the [prosecution's] expert and even consulted with a defense expert who refuted the prosecution's expert's findings." Dkt. 17-1 at 6. Thus, Respondent argues no deficient performance has been shown because trial counsel made a tactical decision and "[i]t was clearly defense counsel's strategy to conduct limited cross-examine of Dr. Crawford-Jakubiak and then call a defense witness to challenge those

13

findings." *Id.* (citing *Strickland*, 466 U.S. at 689; *Harrington*, 562 U.S. at 106 ("Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to anyone technique or approach")). Respondent also points out that "[c]ounsel need only make 'objectively reasonable choices.'" *Id.* at 6-7 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Brown v. Uttecht*, 530 F.3d 1031, 1036 (9th Cir. 2008) ("We give 'great deference' to 'counsel's decisions at trial, such as refraining from cross-examining a particular witness'"); *Mancuso v. Olivarez*, 292 F.3d 939, 955 (9th Cir. 2002) ("Mancuso's suggestions regarding how defense counsel might have handled [the witness's] cross-examination differently are insufficient to support an ineffective assistance of counsel claim") *overruled on other grounds by Slack v. McDaniel*, 529 U.S. 473 (2000)). The Court agrees with Respondent. Specifically, as shown above, the record shows that during the limited cross-examination of Dr. Crawford-Jakubiak, trial counsel successfully established that the expert could not determine when the injuries had occurred and that the victim's other complaints could be linked to a urinary tract infection. 1 RT 157. Meanwhile, trial counsel also presented testimony from a defense expert witness challenging the SART exam findings by stating he would not have noted an "abrasion" to the victim's vagina. 1 RT 185. The Court has also pointed out that the prosecution did not call either the nurse practitioner or the physician who conducted the SART initial and follow-up exam to testify. Instead, as mentioned, the prosecution called Dr. Crawford-Jakubiak to testify as to the results of the SART exams. The Court finds that trial counsel's tactical decisions—limiting his cross-examination of the prosecution's expert and attempting to refute the medical evidence with a defense expect—were reasonable. Therefore, trial counsel could have reasonably concluded he had no legal basis for challenging the evidence by conducting further cross-examination of the prosecution's expert and thus, Petitioner fails to show deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance.").

Even if Petitioner could show deficient performance, he cannot establish prejudice by trial counsel's failure to conduct further cross-examination of the prosecution's expert. A shown above, the victim testified about Petitioner's "privates" touching her "privates" and her mother

14

discovered her in the bathroom immediately after the incident screaming that her "privates hurt." 1 RT 50, 67-69. Moreover, Petitioner has failed to articulate, much less demonstrate, how any additional questioning during cross-examination by trial counsel would have changed the outcome of the proceedings. *Strickland*, 466 U.S. at 694. As explained above, the likelihood of a different result must be "substantial, not just conceivable." *Harrington*, 562 U.S. at 112. Furthermore, the evidence supporting the lewd and lascivious charges—that Petitioner caused the victim and Petitioner's son to engage in sexual conduct with each other—was extensive. *See Leite*, 2014 WL 1496556, *3. On direct appeal, the state appellate court found that sufficient evidence supported the finding that the conduct was "sexually motivated and committed for the purpose of [Petitioner's] sexual gratification." *Id.* Therefore, no prejudice is shown.

Accordingly, because there is no basis for concluding that the state courts' rejection of Petitioner's IAC claim—based on trial counsel's failure to cross-examine the medical personnel— was an objectively unreasonable application of clearly established federal law. *See Harrington*, 562 U.S. at 101.

### 2. Trial Counsel's Failure to Elicit Testimony That No DNA or Other Scientific Evidence Was Discovered on the Victim

Petitioner also claims that trial counsel rendered ineffective assistance by failing to inquire from the prosecution's expert as to why there was no DNA, or other scientific evidence, recovered during the SART exam. Dkt. 1 at 7-8.

Respondent points out that "it is not clear that there would have been any DNA evidence available to recover because there was no evidence that petitioner ejaculated and, in any event, the victim Jane Doe may have taken a shower after she and petitioner "'played horsey.'" Dkt. 17-1 at 7 (citing 1 RT 51-53 (Jane Doe's mother testified that she discovered her daughter in the bathroom with her wet clothes on the floor and that petitioner had made her take a shower)). The Court agrees with Respondent that Petitioner displays a lack of specificity regarding counsel's alleged deficient performance. Therefore, trial counsel could have reasonably concluded that there was no need to elicit such unnecessary testimony, and thus, Petitioner fails to show deficient performance. *See Rupe*, 93 F.3d at 1445. Moreover, any such additional questioning relating to such scientific

evidence would not have made any difference to the outcome of the proceeding. The SART exam revealed that the victim suffered traumatic injuries to her vagina, hymen, and urethral meatus. 1 RT 155-156. The jury heard testimony from the victim and her mother that Petitioner's penis penetrated the victim's vagina and it caused her to suffer pain afterwards. 1 RT 50, 67-69. There is not a substantial likelihood that the additional questions about a lack of DNA evidence would have caused a different result. *See Harrington*, 562 U.S. at 112.

Accordingly, the state courts' rejection of his IAC claim—relating to trial counsel's failure to elicit testimony that no DNA or other scientific evidence was discovered on the victim—was an objectively reasonable application of clearly established federal law. *See Harrington*, 562 U.S. at 101; *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

### 3. Appellate Counsel's Failure to Contest Petitioner's Conviction on Count One

Finally, Petitioner claims that his appellate counsel performed deficiently on the ground that he failed to contest Petitioner's conviction on count one. Dkt. 1 at 8-9.

With respect to claims of ineffective assistance of appellate counsel, the *Strickland* standard also applies. *Evitts v. Lucey*, 469 U.S. 387 (1985). A petitioner must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. This has assumed a greater importance in an era when oral argument is strictly limited in most courts—often to as little as 15 minutes—and when page limits on briefs are widely imposed." *Jones v. Barnes*, 463 U.S. 745, 752-53 (1983). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751-52; *id*. at 752 ("Multiplicity hints at lack of confidence in any one [claim]."); *Pollard v. White,* 119 F.3d 1430, 1435 (9th Cir. 1997) ("A hallmark of effective appellate counsel is the ability to weed out claims that have no likelihood of success, instead of throwing in a kitchen sink

16

full of arguments with the hope that some argument will persuade the court."); *Miller v. Keeney*, 882 F.2d 1428, 1433-34 (9th Cir. 1989) ("the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy"). Thus, "it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

To the extent that Petitioner is asserting that appellate counsel should have raised IAC claims regarding trial counsel's failure to raise a defense to count one, including failing to cross-examine the medical personnel and failing to raise the fact that there was no DNA or other scientific evidence discovered on the victim, such claims would have failed for the reasons discussed above. The failure of an attorney to raise a meritless claim or take a futile action fails both *Strickland* prongs. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983) (appellate counsel's failure to raise meritless claim not ineffective assistance); *Gonzalez v. Knowles*, 515 F.3d 1006, 1017 (9th Cir. 2008) ("counsel cannot be deemed ineffective for failing to raise [a] meritless claim").

Accordingly, Petitioner is not entitled to relief on any of his IAC claims, and habeas relief is DENIED.

## IV. REQUESTS FOR APPOINTMENT OF COUNSEL AND EVIDENTIARY HEARING

Petitioner requests appointment of counsel and an evidentiary hearing. *See* Dkt. 1 at 6; Dkt. 19 at 1.

The Sixth Amendment's right to counsel does not apply in habeas corpus actions. *See Knaubert v. Goldsmith*, 791 F.2d 722, 728 (9th Cir.), *cert. denied*, 479 U.S. 867 (1986). However, a district court is authorized to appoint counsel to represent a habeas petitioner whenever "the court determines that the interests of justice so require" and such person is financially unable to obtain representation. 18 U.S.C. § 3006A(a)(2)(B). The decision to appoint counsel is within the discretion of the district court. *See Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986), *cert. denied*, 481 U.S. 1023 (1987); *Knaubert*, 791 F.2d at 728. Appointment is mandatory only when the circumstances of a particular case indicate that appointed counsel is

17

necessary to prevent due process violations, *see Chaney*, 801 F.2d at 1196; *Eskridge v. Rhay*, 345 F.2d 778, 782 (9th Cir. 1965), *cert. denied*, 382 U.S. 996 (1966), and whenever an evidentiary hearing is required, *see* Rule 8(c) of the Rules Governing Section 2254 Cases; *United States v. Duarte-Higareda*, 68 F.3d 369, 370 (9th Cir. 1995).

The Court finds that the appointment of counsel is not warranted, as the issues presented in the petition were straightforward, and the Court has resolved all claims on the merits.

There also is no indication that an evidentiary hearing is required under 28 U.S.C. § 2254(e). The Court concludes that no additional factual supplementation is necessary, and that an evidentiary hearing is unwarranted with respect to the claims raised in the instant petition. For the reasons described above, the facts alleged in support of these claims, even if established at an evidentiary hearing, would not entitle Petitioner to federal habeas relief. Further, Petitioner has not identified any concrete and material factual conflict that would require the Court to hold an evidentiary hearing in order to resolve. *See Cullen v. Pinholster*, 563 U.S. 170 (2011).[4]

Accordingly, Petitioner's requests for appointment of counsel and an evidentiary hearing are DENIED.

## V.  CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case. For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's IAC claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

## VI.  CONCLUSION

For the reasons outlined above, the Court orders as follows:

---

[4] The Supreme Court has held that federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits" and "that evidence introduced in federal court has no bearing on" such review. *Pinholster*, 563 U.S. at 181-82. The Ninth Circuit also has recognized that *Pinholster* "effectively precludes federal evidentiary hearings" on claims adjudicated on the merits in state court. *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013); *see also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013).

1.   All claims in the petition are DENIED, and a certificate of appealability will not issue.  Petitioner's requests for appointment of counsel and an evidentiary hearing are DENIED. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2.   The Clerk of the Court shall terminate any pending motions and close the file.

IT IS SO ORDERED.

Dated: April 22, 2019

_____
YVONNE GONZALEZ ROGERS
United States District Court Judge